Argued November 1, 1978, affirmed March 8, 1979

JOHNSTON, *Appellant,*
*v.*
THE OREGON BANK, *Respondent.*
(No. 13,887-L, SC 25516)
591 P2d 746

Allen L. Johnson of Gardner, Honsowetz & Johnson, Eugene, argued the cause and filed briefs for appellant.

Barbee B. Lyon, Portland, argued the cause for respondent. With him on the brief were Don H. Marmaduke and Tonkon, Torp & Galen, Portland.

HOLMAN, J.

## HOLMAN. J.

This is a suit by a guarantor of a debt against a creditor, to whom a guaranty was given, contending that the creditor did not dispose of collateral which was security for the debt in a commercially reasonable manner. Plaintiff-guarantor requested a declaration of rights, release from its guaranty, and damages. He appeals from a judgment of dismissal pursuant to an order striking his complaint which has been treated by the parties as the equivalent of a demurrer.

Plaintiff was the principal owner of stock in a corporation, which corporation was a partner with an individual in the Van Petten Lumber Company (the lumber company). Plaintiff was also the managing director of the lumber company, which was desirous of borrowing money from defendant, The Oregon Bank (the bank). As a prerequisite to making the loan, the bank required the lumber company to give it a security interest in approximately all of its assets and required plaintiff to guarantee the debt as well. The security interest was given, the guaranty was made, and the loan was granted. The lumber company became delinquent in its payments on the loan, whereupon the bank threatened foreclosure of its security interest in the lumber company's assets. As a result, the lumber company and the bank entered into a written agreement whereby the bank took over all of the lumber company's assets upon which it had a security agreement for the purpose of liquidation. The bank agreed it would "sell and dispose of the secured property at the highest and best price in order to reduce the indebtedness * * * to the greatest possible extent, at public or private sale."

Upon liquidation, insufficient funds were realized to liquidate the debt and the lumber company became bankrupt. The trustee in bankruptcy brought a proceeding against the bank, claiming it had not disposed of the assets in a commercially reasonable manner in that it had realized less than it should have on the sale

[425]

of the assets and that its expenses in conducting the sale were excessive. This is identical to the claim being made against the bank by plaintiff. The referee in bankruptcy upheld the trustee's contentions to the extent of $75,000. This sum, plus the amount the bank had actually realized from the sale of the property, was insufficient to pay the lumber company's debt to the bank. Plaintiff then instituted this suit, alleging that the bank's action caused the lumber company's bankruptcy. Besides asking that he be relieved from his guaranty, plaintiff contends the bankruptcy resulted in his damage since he was injured in his credit and business standing, the value of his interest in the lumber company was destroyed, wages were lost which he would have drawn from the lumber company, legal expenses were incurred, and he became liable on guaranties which he had made to other substantial creditors of the lumber company besides the bank.

■ The issue concerning plaintiff's liability upon his guaranty to the bank is now moot because the bank has acknowledged in its answering brief that the loan it made to the lumber company has been paid from other sources, that there are no claims outstanding upon plaintiff's guaranty, and that any property pledged by plaintiff personally has been returned to him. Plaintiff does not controvert this in his reply brief.

Plaintiff first contends that his guaranty of the lumber company's debt to the bank established a direct, contractual duty of care to him on behalf of the bank to dispose of the assets of the company in a commercially reasonable manner and that the bank is responsible for his claimed damages which he argues resulted from a breach of that duty. On the contrary, the bank claims that any damage resulting from its improper disposition of the lumber company's assets was caused to the lumber company, not to plaintiff, and that this claim was prosecuted by the trustee in bankruptcy for the benefit of all creditors, including

[426]

plaintiff as a creditor of the lumber company. Plaintiff responds that he suffered injuries by the bank's improper disposal of the property, which injuries were not common to all creditors but which were individual to him. It is therefore necessary to decide whether the bank, by virtue of its guaranty agreement with plaintiff, is responsible to plaintiff for his claimed damages, separate and apart from any obligations owed by the bank to the lumber company. Any question of damages resulting from liability on plaintiff's guaranty to the bank is now moot.

■ It is our conclusion that the bank does not have an obligation to plaintiff based upon his guaranty to it for the kind of damages now in issue because such damages did not flow from the breach of the guaranty agreement. The damages would have occurred to plaintiff just the same in the absence of any guaranty. The damage to plaintiff resulted from plaintiff's interest in the lumber company as well as his contractual relations with other creditors and from the lumber company's bankruptcy and inability to pay its obligations, which bankruptcy was, in turn, caused by the bank's breach of its agreement with the lumber company. Plaintiff's injury either was derivative through his interest in the lumber company or was the result of business relations with others for the lumber company's benefit. It was not the result of his guaranty to the bank.

A case quite similar to the present is *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 546 P2d 1065 (1976). Weiss was the sole owner of the stock of a corporation, Fall Creek, which borrowed money from Northwest. Weiss guaranteed Fall Creek's debt to Northwest. Fall Creek had financial problems and could not pay and Fall Creek and Northwest entered into an agreement in lieu of foreclosure which provided that Fall Creek would deliver its equipment to Northwest for sale to satisfy the loan. It was found that Northwest was guilty of fraud in the handling of the sale of the equipment and that this resulted in Fall Creek's bankruptcy. Weiss claimed he was damaged

by the actions of Northwest in that the value of his business was destroyed and that he incurred liability on his guarantee of Fall Creek's debts to creditors other than Northwest. Fall Creek's debt to Northwest, which was guaranteed by Weiss, was satisfied by the sale of the equipment. Weiss claimed Northwest owed a direct obligation to him as a guarantor of Fall Creek's debts. We held as follows:

"Weiss is in no different position than any other creditor of Fall Creek. Weiss gave credit to Fall Creek in the form of making a guaranty to the bank and to others. His action is similar to that of the bank or others in lending credit to Fall Creek. When, after the credit is extended, the value of the assets of Fall Creek are lessened allegedly by the fraud of Northwest and, therefore, Fall Creek is unable to pay its creditors, the bank and other creditors cannot maintain separate actions against Northwest. The right of recovery is solely that of Fall Creek. That is true of Weiss as well as other creditors." 274 Or at 350.[1]

---

[1] Plaintiff particularly depends upon two cases which he claims the court misconstrued in *Weiss v. Northwest Accept. Corp.,* 274 Or 343, 546 P2d 1065 (1976). They are: *Buschmann v. Professional Men's Association,* 405 F2d 659 (7th Cir 1969); and *Sacks v. American Fletcher National Bank & T. Co.,*258 Ind 189, 279 NE2d 807 (1972).

In *Buschmann,* the plaintiff entered into a contract with the defendant by which plaintiff agreed to form a corporation, to transfer assets to it in exchange for its common stock, and to guarantee the indebtedness of the corporation to a bank. In return for this promise, the defendant agreed to operate and manage the business of the corporation. The defendant mismanaged the corporation by diverting its assets to its own use and, as a result, the plaintiff had to pay the corporation's indebtedness to the bank. The court held that the plaintiff had a personal cause of action, in addition to that possessed by the corporation, for his damage caused by his payment of the corporation's debt to the bank. *Buschmann* is distinguishable from the present case, in that there the defendant made a promise to the plaintiff that if the plaintiff would guarantee the corporation's debt to the bank, the defendant would manage the corporation. The defendant breached this direct agreement with the plaintiff by diverting the corporation's assets to its own use. The present case would be similar if plaintiff had guaranteed the debt of the creditors other than the bank in return for the bank's promise to sell the lumber company's assets in a commercially reasonable manner. There is no allegation of such an agreement.

*Sacks* holds nothing more than that a guaranty of a loan to a corporation *can be* the basis for a personal cause of action against the lender to whom the guaranty was given. There is no doubt that this is so under circumstances different from the present case, but *Sacks* makes no mention of the circumstances under which it is so.

[428]

Plaintiff's damages either were derivative as the result of his interest in the lumber company or were due to his contractual arrangements upon its behalf which guaranteed its debts to creditors other than the bank.[2]

■ Plaintiff's other contention is that the written agreement under which the bank took over the assets of the lumber company for liquidation was not just a contract for the benefit of the lumber company and the bank but was also a third-party beneficiary contract for his individual benefit and protection. The complaint contains the following allegations:

"* * * Said agreement [for liquidation of the assets] was made for the benefit of Plaintiff individually as well as for the benefit of the partnership.

"* * * * *.

"Defendant knew, at the time they entered into said agreement in lieu of foreclosure, that Plaintiff would, if Defendant failed to honor said agreement, suffer personal losses set forth herein."

This court has adopted the rule concerning contracts for the benefit of third parties as set forth in the Restatement of the Law of Contracts § 133, at 151-52:[3]

"(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3):

"(a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying

---

[2] Plaintiff in his reply brief makes much of the fact that he incurred legal expenses because of his various guaranties to creditors of the lumber company, including the one made to the bank. As explained, expenses in defending guaranties made to others than the bank resulted from contracts plaintiff made in an attempt to aid the lumber company, and the losses would have been incurred whether a guaranty had been made to the bank or not. It is not our understanding that plaintiff intends to allege that the bank ever instituted any legal proceedings against him on his guaranty to it which he had to defend. The mere securing of legal advice as to his position versus the bank would not justify a recovery of legal expenses from the bank because of his guaranty to it.

[3] *Northwest Airlines v. Crosetti Bros.*, 258 Or 340, 483 P2d 70 (1971); *Firemen's Ins. v. Motors Ins.*, 245 Or 601, 604, 423 P2d 754 (1967); *Waterway Terminals v. P.S. Lord*, 242 Or 1, 29, 406 P2d 566, 13 ALR3d 1 (1965).

[429]

circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary;

"(b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances *and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary,* or a right of the beneficiary against the promisee which has been barred by the Statute of Limitations or by a discharge in bankruptcy, or which is unenforceable because of the Statute of Frauds." (Emphasis added.)

The contract said nothing about its being for the benefit of plaintiff or about the bank's undertaking to perform for the lumber company any duty or obligation owed by it to plaintiff.

There is no contention that plaintiff was a donee beneficiary. If he is other than an incidental beneficiary, he then must be a creditor beneficiary. As a guarantor of debts of the lumber company, he can be classed as a potential creditor of the lumber company, which was the promisee of the bank's promise concerning the manner in which the assets were to be handled. However, the performance by the bank of its promise would not have satisfied the duty of the promisee (the lumber company) to the supposed beneficiary (plaintiff). The lumber company's obligation to plaintiff was the payment of its debts so that plaintiff, as its guarantor, would not have to pay them. The bank's promise to the lumber company was to liquidate the assets of the lumber company in a commercially reasonable manner—not to pay the lumber company's debts. As plaintiff claims, the bank's proper performance of its promise to the lumber company might have enabled the lumber company to continue to operate and subsequently to pay its debts, but the bank's promise to the lumber company did not require that the bank pay the lumber company's debts to other

creditors to whom plaintiff had also given a guaranty.[4] The bank's performance of its promise to the lumber company would not have discharged "an actual or supposed or asserted duty" of the lumber company to plaintiff to pay its debts so that plaintiff would not have to pay them. It is not claimed that the agreement amounted to an assignment for the benefit of creditors. Plaintiff is not a creditor beneficiary of the contract but is only an incidental beneficiary. *Northwest Airlines v. Crosetti Bros.,* 258 Or 340, 346, 483 P2d 70 (1971).

4 Corbin on Contracts § 776, at 18-19, describes a creditor beneficiary as follows:

"* * * if he is a creditor of the promisee or of some other person and the contract calls for a performance by the promisor *in satisfaction of* the obligation; or (2) if the promised performance will be of pecuniary benefit to him and the contract *is so expressed as to give the promisor reason to know* that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.[5] A third party may be included within both of these provisions at once, but need not be. One who is included within neither of them has no right, even though performance will incidentally benefit him."

Professor Corbin also expresses the rationale we have used here as follows:

"The performance promised *must be one that will in fact discharge the promisee's* (or another party's) *obligation* to a third person; if it will not do this, the

---

[4] This is further illustrated by the following provision in the agreement between the lumber company and the bank:

"This agreement is not to be construed as an agreement by the Oregon Bank to be responsible, in any way, to other creditors or upon any business obligations of the Van Petten Lumber Co."

[5] Assuming that getting the best price for the lumber company's assets could be of some pecuniary benefit to plaintiff, there is no allegation of any facts which demonstrates that such benefit was contemplated by the lumber company as a motivating cause of its making the contract. The complaint alleges only that the bank knew plaintiff would be damaged if it breached its agreement, but this would be true of any creditor of the lumber company--not just of plaintiff.

[431]

third person may be a creditor of the promisee but he is not a creditor beneficiary of the contract. \* \* \*." (Emphasis added.)

4 Corbin on Contracts § 787, at 102.

Plaintiff claims he has adequately pleaded that he was a third-party beneficiary and that because he has so pleaded he is entitled to an opportunity to prove it. The difficulty with his position is that the only promise it is alleged the bank made to the lumber company was to dispose of the lumber company's assets in a proper manner. This is not a promise to perform the lumber company's obligation to plaintiff and, therefore, plaintiff cannot be a creditor beneficiary under the pleadings.

Plaintiff occupies only the position of a creditor of the lumber company and an incidental beneficiary of the contract between the lumber company and the bank and, as such, he has no right of action against the bank.[6]

The decree of the trial court is affirmed.

---

[6] The bank makes the claim that the action brought by the trustee in bankruptcy against it is *res judicata* of plaintiff's claim. Because we find plaintiff has no right of action against the bank, we do not have to decide that question.