Hillsborough
No. 79-069

TAMPOSI ASSOCIATES, INC.

v.

STAR MARKET CO. INC., AND STAR MARKET COMPANY
A DIVISION OF THE JEWEL COMPANIES

August 17, 1979

*Winer, Lynch & Pillsbury*, of Nashua (*Robert W. Pillsbury* orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Richard V. Wiebusch* orally), for the defendant.

LAMPRON, C.J.    This is an action in which the plaintiff, a real estate agency, seeks to recover from the defendant a commission earned pursuant to a contract the plaintiff made with another party. After a hearing the Trial Court, *Bean*, J., granted the defendant's motion to dismiss for failure to state a claim upon which relief could be granted. The plaintiff excepted to the court's ruling and filed a motion to set aside the decree. The motion was denied, the plaintiff again excepted, and a reserved case was prepared and transferred. We sustain the trial court's ruling.

In 1971, Tap Realty, Inc., hereinafter TAP, obtained a "ground lease" of property in Nashua on which it intended to develop a shopping center. TAP hired the plaintiff, Tamposi Associates, Inc., hereinafter Tamposi, to locate tenants for the shopping center. TAP agreed to pay Tamposi a commission for each tenant produced. Tamposi located two tenants, Wilko of Nashua, Inc., hereinafter Wilko. and Cathay Plaza, Inc., hereinafter Cathay, who executed written leases. Tamposi earned its commissions when it produced the signed leases. TAP, however, did not pay the plaintiff.

In May 1972, TAP negotiated with Star Market Co., Inc., hereinafter Star, to locate a Star Market in the shopping center. The

parties reached an agreement whereby TAP assigned its interest in the "ground lease" to Star in exchange for a loan of $6,000. Star was to release the assignment if TAP either repaid the loan or built a store for Star. Without TAP's knowledge, Star's attorney altered the agreement to provide that TAP must repay the loan *and* build the store to cancel the assignment. The attorney then recorded this altered assignment. When TAP later tendered $6,000 to Star, the defendant refused to execute a release. Because the assignment remained recorded, TAP could not obtain financing, and eventually, the shopping center project failed.

The lessees, Wilko and Cathay, sued TAP and Star. The trial court found that Star's actions constituted intentional interference with the contractual relationship between TAP and the lessees, and it ordered Star to reimburse approximately $35,800 to TAP. TAP was ordered to reimburse $19,200 to Cathay and to honor the lease with Wilko, giving it a $2,800 credit on rents due. This court affirmed the trial court's verdict. *Wilko of Nashua, Inc. v. Tap Realty, Inc.*, 117 N.H. 843, 379 A.2d 798 (1977).

In October 1978, Tamposi sued TAP for its commission, and received a judgment that was not fully satisfied due to TAP's insolvency. Tamposi commenced the present action to recover from Star the commission that TAP owed Tamposi. The plaintiff's basis for recovery rests on tort, not contract. The basis of plaintiff's argument is as follows. Plaintiff had an agreement with TAP and was to receive a commission if it found tenants for TAP's shopping center. Plaintiff found Cathay and Wilko who in fact entered into a leasing arrangement with TAP. At that time the plaintiff was entitled to its commission. Star later interfered with the particular leasing arrangement and as a result TAP became insolvent and was unable to pay its creditors, including the plaintiff.

■ From this scenario the plaintiff argues that it was a third-party beneficiary of the contract between TAP and the lessees, Wilko and Cathay. Because this contract was interfered with by the defendant, the plaintiff asserts that it was damaged to the extent of the unpaid commissions. A third-party beneficiary may recover from one who intentionally interferes with the contract that established the third party's rights. *Bitzke v. Folger*, 231 Wisc. 513, 286 N.W. 36 (1939); *see* 2 S. WILLISTON, CONTRACTS § 347 (W. Jaeger 3d ed. 1959). Plaintiff's writ, however, neither supports its assertion that it was a third-party beneficiary nor establishes the prima facie elements of the tort of interference with contractual relations.

A third-party beneficiary relationship exists if (1) the contract calls for a performance by the promisor which will satisfy some obligation owed by the promisee to the third party, or (2) the contract is so expressed as to give the promisor reason to know that a benefit to a third party is contemplated by the promisee as one of the motivating causes of his making the contract. 4 A. CORBIN, CONTRACTS § 776 (1951). In the present case, the writ contains no allegations that TAP and the lessees contracted with an intent to confer rights upon the plaintiff. Regarding TAP's contract with the lessees, the writ alleges, "[p]laintiff obtained two tenants who executed written leases with TAP, Wilco . . . and Cathay Plaza." Tamposi's rights against TAP derived not from this lease agreement; rather, they existed from the separate contract that TAP had with Tamposi. The plaintiff performed this separate contract with TAP, and it awaited payment by TAP. This contract conferred on plaintiff the status of a creditor of TAP, and as such the plaintiff would benefit if TAP remained in business and paid its obligations. This benefit, however, is incidental and created no rights vis-a-vis the contracts between TAP and the lessees. *Bosse v. Wolverine Ins. Co.*, 88 N.H. 98, 184 A. 359 (1936); 2 S. WILLISTON *supra* § 402, at 1088.

Plaintiff also argues that as an incidental beneficiary it should be able to recover from a tortfeasor who intentionally interferes with a contract between a promisor and promisee if the interference in some indirect manner harms the incidental beneficiary. That is, the plaintiff as a stranger to the contract that was interfered with seeks recovery because the interference rendered one party to the contract insolvent and unable to satisfy its separate and distinct contractual obligations. Plaintiff has not presented any cases to this court that have permitted this extended and remote means of recovery. *See Williamson, Picket, Gross Inc. v. 400 Park Ave. Co.*, 63 App. Div. 2d 880, 405 N.Y.S.2d 709 (1978). Even if an incidental beneficiary could recover, the party would have to establish the elements of the tort of intentional interference with contractual relations. *See* RESTATEMENT (SECOND) OF TORTS §§ 762–74 (1979).

> To be subject to liability . . . the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract. Although the actor's conduct is in fact the cause of another's failure to perform a contract, the actor does not induce or otherwise intentionally cause that failure if he has no knowledge of the contract.

RESTATEMENT (SECOND) OF TORTS § 766, comment *i* (1979); *Griswold v. Heat Inc.*, 108 N.H. 119, 125, 229 A.2d 183, 187 (1967). The plaintiff's writ contains no allegations that Star knew of Tamposi's contract with TAP, that Star had reason to know that plaintiff had not received its commissions, and that Star should have known that its improper conduct was substantially certain to cause TAP not to pay plaintiff's commissions. RESTATEMENT (SECOND) OF TORTS ch. 37, Introductory Note at 5, 6, and § 766, comments *i* and *j* (1979). For the above-stated reasons we hold that the trial court was correct in ruling that plaintiff's writ failed to state a cause of action.

*Plaintiff's exceptions overruled.*

All concurred.